Filed 9/23/24  P. v. Vasquez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANNY VASQUEZ,<br><br>    Defendant and Appellant. | B334700<br><br>(Los Angeles County<br>Super. Ct. No. BA220682) |

Appeal from an order of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Nancy Gaynor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Danny Vasquez—whom a jury convicted of first degree murder in 2002—asks us to reverse the trial court's order denying his petition filed pursuant to Penal Code section 1172.6 (formerly section 1170.95).[1]  As relevant here, that section permits a defendant convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to challenge the conviction and petition for resentencing.  (§ 1172.6, subd. (a).)

Vasquez's appointed appellate counsel filed a brief identifying no issues on appeal and requesting that we follow the procedures outlined in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*).  Vasquez filed a supplemental brief in which he raises 10 arguments concerning purported errors at his trial.  We conclude, however, that none of Vasquez's arguments is cognizable on appeal from the denial of a section 1172.6 petition.  We therefore affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

"Vasquez, a member of the 'Clover' gang, shot and killed Frank Hernandez, a member of the 'Eastlake' gang.  At the time

---

[1] Unless otherwise specified, all statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10), without changing the statute's content.  We hereafter cite to section 1172.6 for ease of reference.

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.  Although we set forth a brief account of the circumstances of the offense taken from our opinion in Vasquez's direct appeal (see *People v. Vasquez* (Feb. 25, 2004, B162629) [nonpub. opn.] (*Vasquez I*)), we do so

of the shooting (the afternoon of August 3, 2001), Hernandez was at home with his mother (Carmen Zapata, who is deaf) and his girlfriend (Shirley Sanchez). Hernandez and Zapata were in the living room; Sanchez was in a bedroom.

"Zapata felt a 'boom' from a gunshot, then saw Hernandez turn around and fall to the floor. She saw Vasquez standing in the doorway, holding a gun. He fired a second shot. Zapata grabbed Vasquez's hand and tried to close the door, but Vasquez put his foot in the doorway. Zapata was face-to-face with Vasquez during the struggle ('I saw [his] face right in front of me').

"When Sanchez heard the first shot, she entered the living room, saw 'a guy' shooting, and saw Zapata trying to protect Hernandez. Sanchez helped Zapata force the door closed, and Vasquez was shut out of the apartment. A neighbor called the police, who received the 911 call at 1:25 p.m., and responded to find Hernandez dead of multiple gunshot wounds." (*Vasquez I, supra,* B162629.)

The district attorney filed an information charging Vasquez with Hernandez's murder (§ 187, subd. (a)) and alleging that Vasquez had committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The information alleged further that "a principal personally and intentionally discharged a firearm, a handgun, which proximately caused great bodily injury and death to [Hernandez] within the meaning of . . . section 12022.53[, subdivisions] (d) and (e)(1)."

only to provide context for our present opinion. Our resolution of Vasquez's appeal does not rely on this factual account.

3

At trial, the court did not instruct the jury on the felony murder rule, the natural and probable consequences doctrine, or any other theory of imputed malice murder.

Instead, with respect to the murder charge, the court instructed that "[e]very person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder in violation of section 187," and that "[Vasquez] is accused of having committed the crime of murder." The court instructed further that " '[m]alice' may be either express or implied," and that "[m]alice is express when there is manifested an intention unlawfully to kill a human being." Finally, the court instructed concerning the requirements for first degree murder as follows:

"All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree.

"The word 'willful,' as used in this instruction, means intentional.

"The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand.

"If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree.

"[¶] . . . [¶]

"To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the

4

reasons for and against such a choice and, having in mind the consequences, he decides to and does kill."

With respect to the section 12022.53 firearm enhancement, the court instructed the jury:

"It is alleged that [Vasquez] intentionally and personally discharged a firearm and caused death to a person during the commission of the crime charged.

"If you find . . . Vasquez guilty of the crime thus charged, you must determine whether . . . Vasquez intentionally and personally discharged a firearm and caused death to a person in the commission of that felony.

"[¶] . . . [¶]

"The term 'intentionally and personally discharged a firearm,' as used in this instruction, means that [Vasquez] himself must have intentionally discharged it."

The jury convicted Vasquez of first degree murder and found true the firearm and gang enhancement allegations. The trial court sentenced Vasquez to 60 years to life in prison. We affirmed Vasquez's conviction on appeal, but modified his sentence to two consecutive terms of 25 years to life "with a 'no parole' condition until he has served 'a minimum of 15 calendar years.'" (See *Vasquez I*, *supra*, B162629.)

Nearly 15 years later, "the Legislature passed Senate Bill [No.] 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

The bill "substantially modified the law relating to vicarious liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [citation] and by narrowing the scope of felony murder [citation]." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11.) The bill also added section 1172.6, which provides a procedure whereby "convicted murderers who could not be convicted under the law as amended" may petition to have their conviction vacated and be resentenced on any remaining counts. (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Via Senate Bill No. 775, the Legislature subsequently expanded the scope of section 1172.6's relief to defendants convicted of murder pursuant to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1); *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959.)

Defendants who fall within section 1172.6's parameters may seek the relief the statute contemplates by "fil[ing] a resentencing petition . . . alleging they could not currently be convicted of murder because of the changes in the law required by Senate Bill No. 1437." (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) "If [a] petitioner [makes] a prima facie showing for relief, the trial court [is] required to issue an order to show cause for an evidentiary hearing." (*Ibid.*, citing § 1172.6, subd. (c).)

In assessing eligibility at the prima facie stage the court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court may deny the petition at the prima facie stage if the record of conviction "conclusively establishes every element of the offense" under a theory of murder that remains valid following the

enactment of Senate Bill Nos. 1437 and 775.  (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)

Vasquez filed a pro se petition pursuant to section 1172.6 challenging his first degree murder conviction.  Checking boxes on a preprinted form petition, Vasquez attested that he "could not presently be convicted of murder . . . because of [Senate Bill No. 1437's] changes" to the law.  Vasquez also requested the trial court appoint counsel to represent him in connection with the petition, and the court did so.

The prosecution filed a written opposition to Vasquez's petition, arguing he is categorically ineligible for section 1172.6 relief because he "was prosecuted as the actual perpetrator who acted with actual malice," and "the jury was not instructed on aiding and abetting," "felony murder, natural and probable consequences[,] or any other theory of culpability that imputed malice to [him] based solely on [his] participation in a crime."

In his written response, Vasquez did not dispute that the jury convicted him as the actual shooter in an express malice murder.  Instead, he made only the conclusory assertion that, given the " 'very low' " prima facie bar established by section 1172.6, "[e]ven in circumstances such as these [he] should get an evidentiary hearing."

At the hearing on Vasquez's petition, the trial court concluded he had failed to demonstrate a prima facie case for relief, explaining:

"In the instant case, the record of conviction establishes that the prosecution tried the petitioner as the actual killer. Furthermore, the only viable theory of first[ ]degree murder the prosecution sought required proof of express malice[,] defined under the law as an intent to kill, an element necessary to convict petitioner of first[ ]degree murder.

7

"While the prima facie bar is low, the record of conviction refutes the allegation made by the petitioner that he could not have been convicted based on the changes to [the law effected by Senate Bill No. 1437].

"The record shows as a matter of law the petitioner was tried as the actual killer, who harbored express malice.  As such, the court declines to make an order to show cause."

Vasquez appealed the court's denial of his petition, and we appointed appellate counsel to represent him.  Vasquez's appointed counsel filed a brief raising no issues and requesting that we follow the procedures set forth in *Delgadillo*, including that we permit Vasquez to file a supplemental brief raising any issues he wishes us to consider.  Vasquez timely filed a supplemental brief.

## DISCUSSION

Under *Delgadillo*, when appointed counsel files a brief in an appeal from the denial of a section 1172.6 petition and identifies no arguable issues, the appellate court is not required to conduct an independent review of the record to identify such issues, even when the defendant files a supplemental brief. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)  The reviewing court, however, has discretion to conduct such a review.  (*Ibid*.) Cognizant of our discretion, we decline to conduct an independent review in this case.

If the appellant files a supplemental brief in a case governed by *Delgadillo*, we are "required to evaluate the specific arguments presented in [the appellant's supplemental] brief." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

In his 17-page supplemental brief, Vasquez raises 10 issues that he contends "would have changed the outcome of

8

the [section] 1172.6 proceedings": (1) the two eyewitnesses who identified him as the shooter did not provide credible testimony, (2) one of the eyewitnesses was not competent to testify, (3) the sign language interpreters utilized at trial were not sufficiently qualified, (4) the prosecution introduced insufficient evidence placing Vasquez at or near the crime scene, (5) the "trial court displayed bias due to race," (6) Vasquez is not guilty of first degree murder because he possessed "a youth state of mind" when he committed the offense, (7) insufficient evidence supports the section 186.22 gang enhancement allegation, (8) the jury instructions provided in the case were "prejudicial and erroneous" (although Vasquez does not contend they misstate the law post-Senate Bill Nos. 1437 and 775, and he fails to identify any specific errors in the instructions), (9) the trial court erred in admitting prejudicial evidence, and (10) insufficient evidence supports Vasquez's conviction because "[t]o prove the killing was deliberate and premeditated, it is not necessary to prove the defendant . . . maturely[ ] and meaningfully reflected upon the gravity of defendant's act." (Capitalization & underscoring omitted.)

But none of these issues—all of which involve purported errors at Vasquez's trial—is cognizable on appeal from the denial of a section 1172.6 petition. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 ["The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or to attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding . . . . The purpose of section [1172.6] is to give defendants the benefit of [Senate Bill No. 1437's] amend[ments to the law] with respect

9

to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved' "]; accord, *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["[s]ection 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his . . . direct appeal"].)  And Vasquez does not dispute that the record of conviction here establishes that the jury found beyond a reasonable doubt all elements necessary to convict him of first degree murder under a theory that remains valid following the enactment of Senate Bill Nos. 1437 and 775.

Accordingly, we affirm the trial court's order denying Vasquez's section 1172.6 petition at the prima facie stage.

## DISPOSITION

The order denying Vasquez's section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


WEINGART, J.


KLINE, J.*

---

&ast; Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11